Milligan, J.,
delivered the opinion of the court:
This is an action brought to recover the net proceeds of thirty bales of cotton, which, it is alleged, were seized by the United States military forces as Confederate cotton, but which was, in fact, the lawful property of the claimant. The cotton, as averred in the petition, was captured in the State of Arkansas, and conveyed to St. Louis, in the State of Missouri, and there turned over to W. P. Mellon, United States Treasury agent, sold at public auction, and the proceeds paid into the Treasury.
The case, as presented in the record, rests on the following-facts :
1. In the fall of the year 1861, the claimant purchased of one Josiah Foster a lot of cotton in the seed, supposed to be about *248 fifty or sixty bales, which Foster was to gin, bale, and deliver at his gin-house, in the country, about nine miles from the town of Van Burén, in Arkansas. A part of the purchase-money was paid at the date of the purchase, and the remainder at or shortly after the cotton was delivered. The last payment was made in March or April, 1882. The cotton thus baled and delivered does not, at the date of its ■ seizure, appear to have been marked in any way, and before it could be got to market a large quantity of it was stolen or carried off. A portion of it, as one witness believes, was taken by one Catterel, a Confederate provost marshal, and issued out to the poor, so that, early in 1863, when it was seized, there were only about thirty or thirty-two bales remaining at the gin.
2. In February or March, 1863, the cotton remaining at the gin was seized by a detachment of the Tenth Illinois Cavalry, under the command of Colonel Stuart, loaded on their wagons, and hauled away. At the time of the seizure the claimant was present, claiming the cotton, and protesting against its removal. Thirty bales were then put on the government wagons and hauled off. '
3. The depositions on file give no further account of this cotton; but in the return from the Treasury Department, the report of the assistant -special agent of the Treasury Department to the Secretary of the Treasury discloses the fact that this cotton was taken from the farm of Josiah Foster, near Van Burén, Arkansas, by a part of the Tenth Illinois Cavalry, and by them brought to Fayetteville, Arkansas. At that 'point it was claimed by one A. Waddell, and thence sent in government wagons, by order of Colonel Stuart, to Springfield, in Missouri, and thence to St. Louis, where it was sold at public auction by the Treasury agent. The quantity thus sold was thirty bales and twelve bags, and after deducting all necessary expenses, including $100 paid by Waddell for. transporting it in government wagons, $8,510 22, as net proceeds, were paid into the Treasury. • /
4. In respect to Waddell’s title to the cotton in question, he states himself that it was all but six hundred pounds, originally purchased from one Cyrus Foster, of Crawford County, Arkansas, and receipted for by an officer of the so-called Confederate government, and placed in Mr. Waddell’s hands for distribution among the poor of that vicinity. No receipt from *249 any Confederate officer is shown, nor does it appear that Mr. Waddell ever removed the cotton from the place at which, it was delivered to the claimant, or exercised any control over it, or at any time previous to its arrival at Fayetteville set up any title to it, although he was present when it was seized by the United States forces at Foster’s gin.
5. The claimant is a naturalized citizen of the United States, and he is shown to have been originally an uncompromising Union man, opposed to secession and rebellion, and at no time to have given any aid, comfort, or encouragement to the.rebellion.
On these facts there is but little difficulty in this case. The claim set up to the cotton by Waddell is clearly without foundation. On his own showing he was but the trustee of a Confederate officer for a specific purpose, and had no legal or equitable title in the cotton. The record discloses no fact from which we are' justified in believing, that it was ever owned by the Confederate government, or any of its officers or agents. On the contrary, it is clearly established that the title was lawfully vested in the claimant under a valid contract of sale at the time of its seizure.
On the evidence found in the record, without exception on the 'part of the defendants, the cotton is identified, and its proceeds traced into the Treasury of the United States.
But there is some difficulty in determining with accuracy the amount for which the judgment ought to be rendered. Only thirty bales are claimed in the petition, and the return of the Treasury Department shows that thirty bales and twelve bags were sold in the same lot, the net proceeds of which were paid into the Treasury, amounting to $8,510 22. The sale was by the pound, and, as there is no evidence showing the exact number of pounds either in the bales or the bags of cotton sold, we are, therefore, left to approximate the true amount for which the judgment ought to be rendered from the best evidence before us.
It is proven that the cotton sold for seventy-five cents per pound, and that the aggregate number of pounds sold was 12,576. Of this amount 600 pounds appear to have been purchased in Springfield, Missouri, and not, therefore, owned by the claimant. Whether these 600 pounds fully account for the twelve bags mentioned in the account of sales is not satisfac *250 torily shown ; but they certainly constitute the only deduction, which from the proof we feel authorized to make. The defendants mixed the two lots or parcels of cotton together, sold both without distinguishing the one from the other, and have failed on the trial to furnish full proof by which the court can accurately separate the net proceeds of the one lot from the other. We are left, therefore, to render the judgment on the proof before us, and direct that it be entered for $8,510 22, less $408, the net proceeds of 600 pounds, which leaves $8,102 22.